**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **B.H. and K.H, Individually and on Behalf of D.H., a Minor, and all others similarly situated;** | : : : | |
| | : | **Case No.:** |
| **Plaintiffs,** | : : | **Judge:** |
| **v.** | : : | **Magistrate Judge:** |
| **The Ohio Department of Education and Workforce;** | : : : | |
| **and** | : : | |
| **Stephen Dackin, in his official capacity as Director of the Ohio Department of Education and Workforce;** | : : : : | |
| **Defendants.** | : : | |

---

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

I.  **INTRODUCTION**

1.    Each paragraph in this Complaint incorporates all others.

2.    This Complaint is brought because the Ohio Department of Education and Workforce ("DEW"), the state educational agency ("SEA") responsible for ensuring the implementation of the Individuals with Disabilities Education Act ("IDEA") in Ohio, has failed to provide students who are placed at the Warren County Educational Service Center ("WCESC") and their parents with the procedural safeguards and due process rights they are entitled to under IDEA, resulting in substantial educational harm and the denial of a free and appropriate public education ("FAPE") to individual Plaintiff D.H. and the class of students with disabilities placed at WCESC.

3.      D.H. is one student among approximately 525 students with disabilities who were placed by their public-school districts at WCESC educational programs and who were the subject of a systemic state complaint, CP# 0098-2022, filed on May 31, 2022, by Disability Rights Ohio ("DRO") with DEW's Office for Exceptional Children ("OEC"). The complaint alleged a variety of violations of IDEA by WCESC and the school districts, including but not limited to a failure to provide access to academic curriculum, failure to implement individualized education programs (IEPs), and failure to provide appropriate behavioral interventions, that resulted in the denial of FAPE to the students.

4.      The OEC completed its investigation of the complaint by reviewing a sample of 203 students and conducting on-site visits, among other activities, and determined that violations of IDEA did occur that resulted in FAPE denials for students. OEC issued separate letters of findings and specific corrective action to WCESC and each school district, including significant compensatory education awards for many of the students in the sample.

5.      After receiving pressure from WCESC and a small number of the school districts involved, members of senior leadership at DEW took control of the adjudication of the claim from the OEC and "paused" all corrective action for every school district and WCESC for an entire year. This action ignored DEW's obligations under IDEA to promptly correct IDEA violations and ensure procedural safeguards for students with disabilities and their parents. During this time, DEW senior leadership engaged in an arbitrary and one-sided "reconsideration" process with WCESC and school districts that is specifically prohibited by its own policies and procedures, while purposefully and completely excluding parents and students from participating.

6.      After more than 18 months had passed since the complaint was filed, DEW senior leadership revised the corrective action for every school district and reduced or eliminated the compensatory education awards of many of the students. In doing so, DEW deprived a significant number of students with disabilities substantial educational benefits.

7.      DEW senior leadership engaged in these actions, despite the objections of their own special education experts in the OEC, to placate threats from WCESC and school districts who were unhappy with the systemic state complaint findings, undermining one of the few procedures that parents and students are afforded to enforce their rights under IDEA.

8.      In addition to revising the corrective action for the students in the sample, DEW further abandoned its obligation to ensure procedural safeguards worked to protect students by refusing to determine whether the remaining students not included in the sample were entitled to compensatory education to remedy FAPE denials.

9.      The parents and students involved in the complaint were never notified that IDEA violations had occurred, that their child had been denied FAPE, that compensatory education was awarded to their student, or that a reconsideration was taking place to recalculate and revise what services were owed to their child for them to receive FAPE.

10.      DEW's delay and "pause" of corrective action for more than one year further denied students FAPE and subjected them to an unreasonable length of time without necessary educational services.

11.      DEW's actions with respect to its state complaint process jeopardize the independence and effectiveness of all future state complaint investigations, creating a systemic issue that subjects DEW to liability under IDEA.

3

12. After learning that DEW reconsidered the findings in the state complaint and reduced D.H.'s compensatory education without their knowledge or participation, B.H. and K.H. attempted to enforce their rights by filing a due process complaint and request for hearing on behalf of D.H. and all similarly situated students, as provided for in DEW's policies and procedures.[1] The complaint was filed against DEW as the party who violated IDEA, denied students and parents procedural safeguards, unreasonably delayed the remedy for FAPE denial, and actively participated in denying D.H. – and similarly situated students – a FAPE. Despite expressing concern over DEW's mishandling of the complaint process, the impartial hearing officer ("IHO") and state level review officer ("SLRO") dismissed the due process complaint, holding that DEW cannot be a party to due process.[2]

13. Plaintiffs D.H. and his parents B.H. and K.H. are part of the class of approximately 525 students and their parents or guardians that have been deprived of their procedural safeguards, due process rights, and substantial educational benefits because of DEW's failure to comply with its own procedures and IDEA. They seek to represent all similarly situated students and their parents.

14. The Plaintiffs have exhausted their administrative remedies as required by IDEA. In addition, Plaintiffs should not be required to exhaust administrative remedies due to the systemic nature of the claims and procedural violations that are not specific to one student or their individualized education programs, but that affect all students in the class equally.

---

[1] Ohio Department of Education and Workforce, Office for Exceptional Children, State Complaint Policy C-5 (July 21, 2021).
[2] Ohio is a two-tier due process state for IDEA disputes. An impartial hearing officer (IHO) is the decision-maker at the first tier. The losing party must appeal to a state level review officer (SLRO) to exhaust the administrative remedy prior to filing in court. Ohio Admin. Code 3301-51-05 (K)(13)(b).

15.     Plaintiffs seek declaratory relief that DEW and its director have violated IDEA by denying parents and students the procedural safeguards they are entitled to and failing to implement an effective state complaint process, causing substantial educational harm for D.H. and the class of students at WCESC. Plaintiffs seek declaratory relief that defendants' violations of IDEA in their administration of the state complaint process and their general supervisory authority resulted in systemic harm for this class of students and will result in systemic harm for future students with disabilities that utilize the state complaint process if relief is not granted. Plaintiffs seek declaratory relief that these violations of IDEA subject DEW and its director to liability under the statute.

16.     Plaintiffs seek declaratory relief that the original compensatory education awards should be reinstated for students, that the remaining students that were never included in the sample are reviewed by defendants to determine if they require compensatory education services, and that all students should be reviewed to determine if the significant pause of corrective action and delay in implementation has created a need for additional compensatory services.

17.     Plaintiffs seek declaratory relief that they have exhausted administrative remedies under IDEA and are properly before this Court.

18.     Plaintiffs seek declaratory relief that Defendants have deprived them of fundamental rights granted to them under IDEA without due process in violation of the Fourteenth Amendment of the United States Constitution.

19.     Plaintiffs seek declaratory relief that Stephen Dackin, in his official capacity as Director of the Ohio Department of Education and Workforce, is a state actor that continues to deprive Plaintiffs of their rights under the color of state law.

20.     Plaintiffs seek injunctive relief to prevent Defendants from continuing to deny students with disabilities and their parents their procedural safeguard rights and their right to FAPE by selectively applying their state complaint procedures and failing to comply with IDEA.

21.     Plaintiffs seek injunctive relief to prevent Defendants from continuing to deny Plaintiffs due process rights under the 14th Amendment of the U.S. Constitution.

## II.     JURISDICTION AND VENUE

22.     This action is brought pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*

23.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which gives United States District Courts original jurisdiction in suits arising under the Constitution or laws of the United States and against defendants acting under color of state law, pursuant to 42 U.S.C. § 1983.

24.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3), which gives United States District Courts original jurisdiction in suits to provide relief for the deprivation of civil rights under color of state law.

25.     In addition, this Court has jurisdiction over the Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, 65.

26.     Venue is proper in the Southern District of Ohio, Eastern Division at Columbus, because the Defendants are located in this District within the meaning of 28 U.S.C. § 1391(b) and because the events, acts, and omissions giving rise to Plaintiffs' Complaint occurred in this district.

## III.     PARTIES

27.     Plaintiff D.H. is a thirteen-year-old child who is diagnosed with autism, and who resides with his mother and father in the City of Maineville, Warren County, Ohio.

28.     Plaintiff D. H. is identified by his school district as a child with a disability entitled to special education services under IDEA.

29.     Plaintiffs B.H. and K.H. are the parents of D.H. and reside with D.H. in the City of Maineville, Warren County, Ohio.

30.     Pursuant to Fed. R. Civ. P. 5.2(a), D.H. proceeds in this case using his initials because he is a minor child. D.H.'s parents, B.H. and K.H., proceed in this case using their initials to prevent identification of D.H.

31.     Defendant the Ohio Department of Education and Workforce ("DEW") is a public agency of the State of Ohio located in Franklin County, Ohio.

32.     DEW is a state educational agency ("SEA"), as defined in IDEA, that receives federal financial assistance to ensure the provision of a free and appropriate public education ("FAPE") to students with disabilities in the state of Ohio. 20 U.S.C. § 1401(32).

33.     Defendant Stephen Dackin is the current Director of DEW and is responsible for all of its functions, including those carried out pursuant to IDEA.

IV.     **FACTS**

34.     As the SEA, DEW is also responsible for ensuring that every student with a disability in Ohio receives a FAPE. 34 CFR § 300.101; 20 U.S.C. § 1412.

35.     DEW is responsible for the general supervision, including monitoring and enforcement, of IDEA in Ohio and is required to ensure effective implementation of procedural safeguards for students with disabilities and their parents. 34 CFR §§ 300.149-300.150; 20 U.S.C. § 1221e-3.

36.     A critical piece of these procedural safeguards is the state complaint process that each SEA is required to adopt. 34 CFR §§ 300.151-300.153; 20 U.S.C. § 1221e-3.

37.     The OEC at DEW accepts and investigates state complaints regarding violations of IDEA, including "systemic" complaints that address violations concerning more than one child and complaints brought by third parties pursuant to 34 CFR §§ 300.151-300.153 and Ohio Admin. Code 3301-51-05(K)(6).

38.     As part of both the state complaint process and their general supervisory authority, DEW has an affirmative obligation to correct IDEA violations in a timely manner and to ensure that necessary corrective action is implemented, including compensatory education if required. 34 CFR § 300.151(b); 20 U.S.C. § 1221e-3.

39.     DEW is required to correct noncompliance as soon as possible, and in no case later than one year after identification of noncompliance. 34 CFR § 300.600(e); 20 U.S.C. § 1416(a)).

40.     On May 31, 2022, Disability Rights Ohio ("DRO") filed a systemic state complaint with DEW's OEC against WCESC and all public-school districts who place students at WCESC for special education services, on behalf of three named students and all similarly situated students with disabilities.

41.     The systemic complaint alleged various violations of IDEA resulting in a denial of FAPE for the students there, including but not limited to a failure to provide access to general education curriculum, failure to provide IEP services, failure to provide appropriate behavioral interventions, and a failure to revise IEPs for lack of student progress.

42.     The systemic complaint applied to approximately 525 similarly situated students.

43.     OEC accepted the systemic complaint, which was labeled CP #0098-2022, and began its investigation in June 2022.

44.     OEC issued Letters of Allegations ("LOAs") to WCESC and every school district, informing them of the complaint and the substantive contents of the allegations, on or about July 21, 2022.

45.     OEC staff chose a random sample of 203 students, representative of every public district, to review for the complaint.

46.     OEC conducted on-site visits at WCESC and interviewed WCESC staff and administrators, among other activities, in addition to its record review, as part of its investigation.

47.     OEC concluded that violations of IDEA occurred at WCESC and approximately 43 school districts.

48.     On December 16, 2022, OEC issued separate Letters of Findings ("LOFs") to WCESC and each of the 43 school districts with corrective action that required staff training, amending noncompliant IEPs, significant compensatory education for many of the students, and a requirement to adopt school district policies to better monitor students placed in separate facilities.

49.     97 students out of the 203 students in the sample were awarded compensatory education services ranging from 12 hours to over 200 hours of educational instruction each.

50.     None of the parents or students at WCESC that were covered by the systemic complaint, including B.H. and K.H., were notified by OEC, WCESC, or their school districts that violations of IDEA had occurred, that corrective action had been issued, that their child had been or may have been denied FAPE, or that they had been awarded compensatory education.

51.     IDEA and its implementing regulations are silent as to whether state complaints may be appealed, and the Office of Special Education Programs ("OSEP") at the U.S.

Department of Education guidance has left this decision up to each state. OSEP Memo 13-08, July 13, 2013, Question B-32, Page 31.

52.     IDEA requires DEW to adopt written state complaint procedures and disseminate these procedures to all interested parties including parents, advocacy organizations such as DRO, parent training centers, and other relevant parties. 34 CFR § 300.151(a); 20 U.S.C. § 1221e-3.

53.     DEW's written state complaint procedures explicitly state that there is no internal administrative appeal or reconsideration process for state complaint findings, but parties may file a due process complaint regarding the findings of a state complaint. Ohio Department of Education and Workforce, Office for Exceptional Children, State Complaint Procedures C-5, effective July 27, 2021.

54.     After the LOFs were issued, on January 6, 2023, WCESC Superintendent and legal counsel demanded an in-person meeting with DEW senior leadership and threatened litigation over the LOFs and corrective action issued by OEC.

55.     DEW senior leadership, including but not limited to the State Superintendent of Public Instruction, Chief Legal Counsel, Chief of Staff, and others, met privately with WCESC in-person on January 18, 2023.

56.     No students, parents, guardians, or DRO were aware that this meeting was taking place nor were they invited to attend.

57.     On January 19, 2023, DEW Chief Legal Counsel informed WCESC that in response to their meeting, DEW was "extending" the timelines for corrective action, and it would "review" the LOFs.

58.     On January 20, 2023, at the instruction of DEW senior leadership, OEC "extended" all corrective action due in January 2023 for WCESC and every school district, including amending noncompliant IEPs, with no updated due date.

59.     WCESC staff emailed several of the school districts informing them that DEW senior leadership had paused corrective action based on their demand and encouraged school districts to submit "appeals."

60.     Approximately seven school districts out of 43 submitted "appeals" or "requests for reconsideration" to DEW and threatened litigation regarding the findings and corrective action.

61.     None of the school districts nor WCESC filed a due process complaint over the findings that related specifically to their district, as required by DEW's state complaint policy.

62.     On or about January 30, 2023, DEW senior leadership instructed OEC to "pause" all corrective action for WCESC and every school district indefinitely.

63.     On January 30, 2023, OEC issued letters to WCESC and all 43 school districts indicating that corrective action was paused indefinitely. No other information was included in the letters.

64.     On January 30, 2023, DRO submitted a public records request to DEW regarding the status of the complaint and corrective action.

65.     DEW senior leadership unilaterally decided to conduct an internal reconsideration of the findings and corrective action for WCESC and all 43 school districts, despite a vast majority of districts not submitting appeals, in explicit violation of its own policies and procedures.

66.     DEW has never allowed an internal appeal or reconsideration of its state complaint findings from any party until this state complaint, CP # 0098-2022.

67.     DEW senior leadership never advised WCESC or the school districts that submitted appeals that DEW's published policy prohibited such appeals but allowed for due process if they disagreed with the findings or corrective action relevant to their district.

68.     At no time did DEW senior leadership consult with the OEC staff that investigated the complaint, and that typically oversee IDEA complaints, about their decision to pause corrective action and reconsider the LOFs, even after several OEC staff members expressed concerns that DEW was violating its own policies and IDEA.

69.     On May 12, 2023, at the direction of DEW senior leadership, OEC issued a memo to DRO, OSEP, WCESC, and the school districts, indicating that corrective action was still paused as DEW conducted a "review." The letter reiterates that all corrective action is still due by December 23, 2023, and makes no mention of any substantive changes to the LOFs or corrective action plans, or any reconsideration or appeal process.

70.     Throughout 2023, DEW senior leadership met privately with the WCESC Superintendent and legal counsel and some of the school districts regarding the revisions to the LOFs and corrective action plans.

71.     At no time were parents, students, or DRO notified that this reconsideration process was occurring or that any substantive revisions to corrective action were being considered. Parents and students were completely and intentionally excluded from participating in or providing information for the reconsideration.

72.     The "reconsideration" process lasted for more than 11 months while all corrective action was paused and no further clarification was provided by DEW.

73. In October 2023, DRO requested a meeting with DEW to enquire about the status of the complaint. At that meeting, DEW legal counsel informed DRO that the LOFs and corrective action were being unilaterally and substantively revised by using a "qualitative analysis" to re-calculate compensatory education awards based on updated documentation submitted by only school districts.

74. DEW provided no answer or information about the additional 300 or more students enrolled at WCESC, but not reviewed by OEC during its investigation, and whether they may require compensatory education to remedy a FAPE denial.

75. No parents or students were provided notice or the opportunity to submit any information or documentation as part of DEW's "qualitative analysis."

76. DEW began issuing revised LOFs and corrective action plans on a rolling basis beginning in December 2023, more than 18 months after the complaint had been filed. A majority of the revised LOFs were not issued until January 2024.

77. The revised LOFs provided for an entire additional year to complete corrective action, with final completion due in December 2024.

78. DEW's revised LOFs and corrective action plans resulted in a substantial loss of compensatory education for a majority of the students.

79. Districts that did not request a reconsideration and did not participate in the reconsideration process or submit additional documentation still had their corrective action plans revised. A re-calculation of compensatory education for students occurred even where a district did not provide any documentation to support the re-calculation.

80. The "qualitative analysis" DEW utilized had little to no evidence or concrete methodology to support it.

81.    D.H. is just one of at least 90 students from the original sample that had compensatory education hours recalculated. DEW has no plan to address compensatory education services for the hundreds of other similarly situated students at WCESC.

82.    During the 18 months corrective action was delayed by DEW, some students have moved, others have graduated or aged out of services, and as a result DEW has eliminated many of their compensatory education awards.

83.    The delay caused by the reconsideration process has resulted in additional denials of necessary educational services to students at the WCESC.

84.    Defendants' actions are in direct violation of their obligation to ensure that students with disabilities receive FAPE.

85.    Defendants' actions are in direct violation of the IDEA requirement that corrective action be implemented in one year or less, with no exceptions.

86.    Defendants' actions are in direct violation of their obligation to ensure that there are appropriate procedural safeguards in place for parents and students with disabilities to resolve violations of IDEA.

87.    Defendants' actions deprived parents/guardians and students with disabilities of educational benefit without due process in violation of the 14th Amendment of the U.S. Constitution.

**D.H. and his parents B.H. and K.H.**

88.    At the time the systemic complaint was filed, D.H. was a sixth-grade student residing in the Little Miami Local School District and had been placed at WCESC by his school district of residence for special education services since 2018.

89.     D.H. was chosen randomly for review by OEC as part of the student sample for state complaint CP # 0098-2022.

90.     B.H., D.H.'s father, was contacted by OEC between June and August of 2022 during the investigation and spoke to an investigator about D.H.'s experiences at WCESC.

91.     OEC found violations of FAPE for D.H. as a result of this investigation, and D.H. was awarded 109 hours of compensatory education.

92.     B.H. and K.H. were not notified by OEC, WCESC, or Little Miami Local School District that D.H. was denied a FAPE or that D.H. was awarded 109 hours of compensatory education.

93.     D.H.'s school district Little Miami did not request an appeal or reconsideration of the LOF or corrective action and did not participate in or submit any additional documentation for the reconsideration process or "qualitative analysis."

94.     B.H. and K.H. were never notified that a reconsideration was occurring and were not afforded any opportunity to participate or to provide additional information or documentation.

95.     DRO discovered that D.H.'s compensatory education had been reduced from 109 hours to 35 hours, a loss of 74 hours of services, and notified B.H. and K.H. of the details of D.H.'s FAPE denial and DEW's actions with respect to the state complaint.

96.     D.H. was originally awarded 109 hours of compensatory education in the areas of functional academics, communication, behavior, gross motor, and fine motor. A primary reason D.H. was awarded such services is because his school district and WCESC failed to locate any IEP at all for him for a portion of the complaint period, leading ODE to conclude that D.H. was

not provided IEP services during this period. The IEP was never located or provided during the reconsideration process.

97. The revised LOF reduced hours in every category and eliminated D.H.'s compensatory education in the areas of communication and behavior. The revised LOF did not address the lack of an IEP in effect during part of the complaint period, how the conclusions were reached about the number of hours required to provide D.H. with a FAPE, or why the communication services were eliminated.

98. By the time DEW issued the revised LOFs, D.H. was an eighth-grade student still placed at WCESC for his educational services and had gone more than 2.5 years without the necessary corrective action and compensatory services for his FAPE denial.

99. B.H. and K.H. decided, after years of waiting, to withdraw D.H. from WCESC and his school district of residence and utilize a state scholarship program for private special education.

100. To date, D.H. has not received the compensatory education he is entitled to.

**Class Allegations**

101. Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of the following Class:

> All students, by and through their parents and guardians, who were placed by their school districts at WCESC and were the subject of state complaint CP # 0098-2022.

102. *Ascertainability:* Each member of the Class is known and can be identified readily through records possessed or accessible by Defendants. WCESC maintains records of the students placed at its facility, and this list represents each and every member of the Class.

103.     *Numerosity:* The Class is so numerous that individual joinder is impractical. The Class consists of 525 students, as well as the students' parents and guardians.

104.     *Commonality*: This case presents numerous questions of law and fact with answers common to the Class that predominate over questions affecting only individual class members. Common questions include:

> a)     Whether Plaintiffs were subject to the same "reconsideration" process by DEW, which denied procedural safeguards and FAPE;
>
> b)     Whether Defendants violated IDEA by failing to maintain appropriate procedural safeguards for parents and students with disabilities required by the Act and its implementing regulations by engaging in a reconsideration process with school districts to the exclusion of parents/guardians and students;
>
> c)     Whether Defendants violated IDEA by unreasonably delaying corrective action for known IDEA violations and FAPE denials by more than one year;
>
> d)     Whether Defendants violated IDEA by failing to exercise general supervisory and monitoring and enforcement authority to timely correct IDEA violations and ensure FAPE is provided to students with disabilities;
>
> e)     Whether Defendants violated the 14th Amendment of the U.S. Constitution by depriving students with disabilities and their parents access to the procedural safeguards they are entitled to, resulting in a denial of necessary educational services without due process of law;
>
> f)     Whether a declaratory judgment should issue reinstating the determination of the OEC; and

g)     Whether Defendants should be enjoined from engaging in such conduct in the future.

105.    *Typicality:* Plaintiffs' claims are typical of the Class they seek to represent. D.H., by and through his parents B.H. and K.H. was placed at WCESC, was subject to the conduct described herein by WCESC, was a subject of state complaint CP # 0098-2022, and was subject to the conduct of Defendants described herein.

106.    *Adequacy of Class Representatives*: Plaintiffs will fairly and adequately protect the interests of the Class they seek to represent. They are aware of their duties to absent class members and are determined to faithfully discharge their responsibilities. Plaintiffs' interests are aligned, and not antagonistic to, the interests of the Class.

107.    *Adequacy of Class Counsel*: Plaintiffs have retained competent counsel with considerable experience in disability rights issues (including issues related to the IDEA), as well as class actions and other complex litigation. Plaintiffs' counsel has done substantial work in identifying and investigating potential claims in this action, has considerable knowledge of the applicable law, and will devote time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

108.    Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs seek certification of a class for declaratory and injunctive relief. Defendants' selective administration of the state complaint procedures, and failure to conduct a neutral process that provided parents and students with procedural safeguards and due process, creates a systemic problem that affects this entire class of students. As such, declaratory and injunctive relief that would remedy the procedural violations of IDEA that resulted in the substantive denial of FAPE of each class member, without the need to conduct an individualized assessment of each student's FAPE claims.

## V.     FIRST CAUSE OF ACTION – THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 U.S.C. § 1415(a)

109.    IDEA provides that "[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a).

110.    To carry out the activities in IDEA, Congress granted broad authority to the Department of Education Secretary to promulgate rules, including rules related to procedural safeguards. 20 U.S.C. § 1221e-3.

111.    In doing so, IDEA's implementing regulations specifically provide for a written state complaint procedure that SEAs are required to adopt. 34 C.F.R. § 300.151.

112.    IDEA's implementing regulations state that each SEA "must adopt written procedures for—(1) Resolving any complaint, including a complaint filed by an organization or individual from another State, that meets the requirements of §300.434 by providing for the filing of a complaint with the [SEA]; and (2) [w]idely disseminating to parents and other interested individuals, including parent training and information centers, Protection and Advocacy (P & A) agencies, and other appropriate entities, the State procedures under §§ 303.432 through 300.434." 34 C.F.R. § 303.432.

113.    This complaint procedure must include an independent determination that the educational agency violated IDEA, as well as effective implementation of corrective action. 34 C.F.R. § 300.152.

114.    DEW must "identify in writing to local educational agencies located in the State" and to the United States Department of Education, any "rule, regulation, or policy as a State-

19

imposed requirement that is not required by this chapter and Federal regulations." 20 U.S.C. § 1407 (a)(2).

115.    DEW is a state educational agency as defined by IDEA and receives federal assistance, therefore is subject to the requirements contained in the Act.

116.    DEW has adopted a written state complaint procedure as required by the Act, which it failed to adhere to in the case of state complaint CP # 0098-2022.

117.    DEW's ad-hoc reconsideration process is not part of DEW's written state complaint procedure. DEW's ad-hoc reconsideration process was not promulgated by state regulation, not created by state statute, and is not written or publicized.

118.    DEW has not identified its ad-hoc reconsideration process to Ohio's local education agencies or to the United States Department of Education.

119.    By failing to maintain procedures in accordance with IDEA and instead engaging in an arbitrary reconsideration process that was selectively applied to the benefit of the WCESC and school districts and to the detriment of students and parents, Defendants have violated an explicit requirement of IDEA to guarantee these procedural safeguards for parents and students with disabilities.

120.    By ignoring their obligation to develop and implement written procedures consistent with IDEA and guarantee effective procedural safeguards, Defendants are liable to the Plaintiff class of students with disabilities and their parents/guardians.

121.    DEW's ad-hoc reconsideration process has not been written or disseminated outside of DEW.

122.     The purpose of "widely disseminating" the written state complaint procedures is so parents are informed of their rights and can fully participate in the complaint process that determines FAPE for their child.

123.     In this case, DEW's published and disseminated procedures clearly state that an internal appeal or reconsideration process does not exist, and that state complaint decisions are final. By creating a back-door avenue reconsideration process for districts to demand their own appeal process that is not available to parents or students, Defendants have made students and parents unsure of their rights and unable to access a fair state complaint system.

124.     As a result of the failure of Defendants to follow their own written procedures and abide by the IDEA, Plaintiffs and the Class have been denied their rights under the Act. Plaintiffs, on behalf of the Class, seek a declaration reinstating the original OEC judgment regarding state complaint CP # 0098-2022.

125.     In addition, on behalf of themselves and the Class, Plaintiffs seek an injunction obligating Defendants to abide by their own written policies in the context of determinations of complaints pursuant to the IDEA.

## VI.     SECOND CAUSE OF ACTION – THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 U.S.C. § 1416(a)

126.     DEW is explicitly responsible for the monitoring and enforcement of IDEA and its implementing regulations. 20 U.S.C. § 1416(a); 34 CFR § 300.600.

127.     This includes an affirmative duty to monitor IDEA implementation, identify noncompliance, use appropriate enforcement mechanisms, and correct noncompliance no later than one year after the identification of noncompliance. 34 CFR § 300.600.

128.     DEW identified noncompliance of IDEA and denials of FAPE in December of 2022 when it sent out its original LOFs. However, it ignored its obligation to correct noncompliance in one year.

129.     DEW waited an entire additional year to begin correcting the noncompliance, and made its updated due dates stretch out another year to December 2024, in explicit violation of the Act. This unreasonable delay left students without FAPE for more than 2.5 years, in deficient education programs that had not undertaken any corrective action.

130.     This delay caused even more unnecessary educational harm beyond what students had already been subjected to when the complaint was filed.

131.     There is no justifiable reason for Defendants to delay corrective action for that length of time, and by doing so, they are liable to the Plaintiff class of students.

132.     As a result of the failure of Defendants to ensure relief to affected students in a timely fashion, Plaintiffs and the Class have been denied their rights under the IDEA. On behalf of themselves and the Class, Plaintiffs seek an injunction obligating Defendants to abide by their obligations under the IDEA to ensure timely enforcement.

## VII.    THIRD CAUSE OF ACTION – THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 U.S.C. §§ 1412(a)(1) & (11)(A)

133.     IDEA confers upon the SEA, in this case DEW, the obligation to ensure that all students with disabilities in the state have FAPE available to them. 20 U.S.C. § 1412(a)(1).

134.     To carry out this obligation, DEW is granted general supervisory authority to ensure that— (i) the requirements of IDEA are met; and (ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency— (I) are under the general supervision of individuals in the State who are

responsible for educational programs for children with disabilities; and (II) meet the educational standards of the State educational agency. 20 U.S.C. § 1412(a)(11)(A).

135.    Defendants had concrete knowledge that the requirements of IDEA, including the provision of FAPE, were not being met by WCESC or the school districts that place students there for services. Upon learning of these violations, DEW had an obligation to exercise its general supervisory authority to correct these violations, regardless of the state complaint or WCESC's objections and demands.

136.    By allowing WCESC and school districts to obstruct corrective action, unreasonably delay implementation, and demand changes that are not required by law, Defendants failed to exercise general supervisory authority, including the obligation to ensure the provision of FAPE to the Plaintiff class of students.

137.    In addition, Defendants had concrete information that many of the students in the Plaintiff class that were not included in the complaint sample had likely been denied FAPE. Rather than exercise supervisory authority to require WCESC and school districts to address those FAPE denials and determine whether these students required compensatory education, Defendants ignored these students and their obligation to ensure FAPE was made available to them.

138.    Since Defendants have failed in exercising general supervisory authority over the educational agencies within its jurisdiction, Defendants are liable to the Plaintiff class for the educational harm that they declined to timely correct.

139.    DEW's failure to effectively carry out its general supervisory authority put all students with disabilities in Ohio at risk of educational harm. DEW has created a precedent that any educational agency can demand changes to its enforcement or implementation of IDEA,

bypass parental due process and procedural safeguards, and be rewarded with reduced requirements that allow them to continue to deny FAPE to students with disabilities.

140.    As a result of the failure of Defendants to exercise their mandatory supervisory authority over educational institutions within its purview, Plaintiffs and the Class have been denied their rights under the IDEA. Plaintiffs, on behalf of the Class, seek a declaration reinstating the original OEC judgment regarding state complaint CP # 0098-2022, to ensure that Plaintiffs and Class Members receive FAPE.

141.    In addition, on behalf of themselves and the Class, Plaintiffs seek an injunction obligating Defendants to immediately engage in a review of the entirety of the Class to determine appropriate FAPE for each student.

## VIII.  FOURTH CAUSE OF ACTION- 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

142.    The 14th Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV, § 1.

143.    The right to FAPE and the procedural safeguards that assist in guaranteeing FAPE are fundamental federal rights for students with disabilities and their parents.

144.    Compensatory education is a form of corrective action used to address the failure to provide appropriate services. *See also Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 524 (D.C. Cir. 2005) (requiring compensatory education awards to "be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place").

145.    When OEC issued its Letters of Findings (LOFs) to WCESC and the 43 other school districts, OEC ordered, among other corrective action, compensatory education for certain

24

students. In the sample of 203 students, compensatory education was required for 97 students. OEC's corrective action orders entitled these 97 students to additional educational services.

146.     DEW arbitrarily removed or reduced OEC's grant of entitlement to compensatory education.  DEW did not notify the public about its reconsideration process and did not inform parents of students who were awarded compensatory education about the removal or reduction of compensatory education.

147.     By taking away the OEC's grant of entitlement to compensatory education for certain students and their access to a free appropriate public education, DEW has deprived Plaintiffs of their IDEA substantive rights without due process of law.

148.     By engaging in a process of reconsideration with school districts, which resulted in the reduction or elimination of substantive educational benefits of the Plaintiff class without the knowledge or participation of the students and their parents, DEW has deprived Plaintiffs of their rights to appropriate procedural safeguards and FAPE without due process of law.

149.     As a result of the failure of Defendants to follow their own written procedures, Plaintiffs and the Class have been denied their rights under 14th Amendment. On behalf of themselves and the Class, Plaintiffs seek an injunction obligating Defendants to abide by their obligations to students under the color of law.

## IX.     FIFTH CAUSE OF ACTION-42 U.S.C. § 1983-DEPRIVATION OF CONSTITUTIONAL RIGHTS

150.     Defendants were at all times acting under the color of state law.

151.     The right to FAPE and the procedural safeguards that assist in guaranteeing FAPE are fundamental federal rights for students with disabilities and their parents.

152.     The 14th Amendment of U.S. Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

153.    By engaging in a process of reconsideration with school districts, which resulted in the reduction or elimination of procedural and substantive educational benefits of the Plaintiff class without the knowledge or participation of the students and their parents, DEW has deprived Plaintiffs of their rights to appropriate procedural safeguards and FAPE under IDEA and without due process of law.

154.    As a result of the failure of Defendants to follow their own written procedures, Plaintiffs and the Class have been denied their rights under the 14th Amendment.  On behalf of themselves and the Class, Plaintiffs seek an injunction obligating Defendants to abide by their obligations to students under the color of law.

## X.    PRAYER FOR RELIEF

Plaintiffs request that this Court:

A.  Assume jurisdiction over this matter;

B.  Find that Plaintiffs have exhausted administrative remedies and are properly before this Court for relief;

C.  Certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2);

D.  Declare that Defendants have violated IDEA by engaging in a one-time reconsideration process that is expressly prohibited in state complaint procedures, and intentionally excluding parents and students from participating;

E.  Declare that Defendants' violation of IDEA caused substantial educational harm, or is at serious risk of causing substantial educational harm, to the Plaintiff class;

F.  Declare that Defendants' unreasonable delay of corrective action caused and continues to cause substantial educational harm to the Plaintiff class;

G. Declare that Defendants' intentional violation of IDEA creates a systemic issue that subjects Defendants to liability to the Plaintiff class;

H. Declare that Defendants' actions violated due process under the 14th Amendment of the U.S. Constitution;

I. Require Defendants to restore original compensatory education awards to any student whose hours were reduced or eliminated;

J. Require Defendants to conduct an analysis, or oversee an analysis, as to whether the remaining students in the Plaintiff class that were not part of the sample require compensatory education to remedy denial of FAPE, and order Defendants to award such compensatory education;

K. Require Defendants to conduct an analysis as to whether the 2-year delay in corrective action implementation has created a need for additional compensatory education to remedy FAPE denials, and order Defendants to award such compensatory education;

L. Enjoin Defendants from selectively applying state complaint policies and procedures to favor educational agencies and denying parents and students their procedural safeguard rights in the future;

M. Declare Plaintiffs as prevailing parties;

N. Grant any other relief this Court deems just and proper.

Plaintiffs reserve the right to seek attorneys' fees as permitted by law.

Respectfully submitted,

s/ Paige Peal
Paige Peal (0097877)
ppeal@disabilityrightsohio.org
Kristin Hildebrant (0042086)

khildebrant@disabilityrightsohio.org
Ohio Disability Rights Law and Policy Center, Inc.
Disability Rights Ohio
200 Civic Center Drive, Suite 300
Columbus, OH  43215
(614) 466-7264 (Phone)
(614) 644-1888 (Fax)

s/Michael Boyle
Michael Boyle (0091162)
mboyle@meyerwilson.com
Meyer Wilson
305 W. Nationwide Blvd
Columbus, OH 43215
614-224-6000

*Counsel for Plaintiffs*