# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **B.H.**, *et al.*, | | |
|       **Plaintiffs**, | : | |
|   v. | | Case No. 2:24-cv-3966 |
| | | **Chief Judge Sarah D. Morrison** |
| **OHIO DEPARTMENT OF EDUCATION AND WORKFORCE**, *et al.*, | | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
|       **Defendants**. | | |

## OPINION AND ORDER

Plaintiffs B.H. and K.H., individually and on behalf of their child D.H., brought this putative class action against the Ohio Department of Education and Workforce ("ODEW") and its Director Stephen Dackin, alleging violations of the Individuals with Disabilities Education Act ("IDEA") and 42 U.S.C. § 1983. Defendants moved to dismiss for, among other things, lack of subject matter jurisdiction under Rule 12(b)(1) (ECF No. 15), and that Motion was fully briefed (ECF Nos. 19, 20). The Court then requested additional briefing on the issue of Article III standing. (ECF No. 21). With that supplemental briefing now complete (ECF Nos. 22, 23), the Motion is ripe for review.

For the reasons below, Defendants' Motion is **GRANTED** and this case is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

I.     **FACTUAL BACKGROUND**

ODEW is a state educational agency responsible for ensuring the implementation of the IDEA in Ohio. (Compl., ECF No. 1, ¶ 32.) ODEW's Office for Exceptional Children ("OEC") investigates state complaints regarding IDEA violations, including "systemic" complaints that address violations concerning more than one child. (*Id.* ¶ 37.)

    **A.**     **D.H. was the subject of a systemic complaint and awarded compensatory education for past IDEA violations.**

In May 2022, Disability Rights Ohio ("DRO") filed a systemic complaint with ODEW against the Warren County Education Service Center ("WCESC") and public-school districts that had placed students at WCESC, alleging IDEA violations. (*Id.* ¶ 40.) At the time DRO's systemic complaint was filed, D.H. was a sixth-grade student in the Little Miami Local School District and had been placed at WCESC since 2018. (*Id.* ¶ 88.)

In response to DRO's complaint, OEC investigated a random sample of 203 students that included D.H. (*Id.* ¶¶ 45, 89.) OEC found that IDEA violations had occurred at WCESC and 43 school districts, and it issued Letters of Findings ("LOFs") to those entities; the LOFs had corrective action requirements, including "compensatory education awards" for 97 of the 203 students sampled. (*Id.* ¶¶ 47–49.) D.H. was awarded 109 hours of compensatory education in the areas of "functional academics, communication, behavior, gross motor, and fine motor." (*Id.* ¶ 96.) He was awarded these services because his school district and WCESC failed

2

to locate an Individualized Educational Plan ("IEP") for him during a portion of the complaint period. (*Id.*)

### B. ODEW reconsidered the systemic complaint findings and revised D.H.'s compensatory education award.

In January 2023, WCESC and several school districts requested a reconsideration of OEC's systemic complaint findings, so ODEW put an indefinite pause on all corrective action requirements. (*Id.* ¶¶ 54–62.) ODEW then conducted an internal reconsideration of the findings and corrective action requirements. (*Id.* ¶ 65.) Throughout 2023, ODEW senior leadership met privately with the WCESC Superintendent and its legal counsel and with some of the school districts regarding revisions to the LOFs and corrective action plans. (*Id.* ¶ 70.)

B.H. and K.H. were neither notified that a reconsideration was occurring, nor given the opportunity to participate in the process. (*Id.* ¶ 94.) In December 2023, without input from parents or students, ODEW began issuing revised LOFs. (*Id.* ¶ 76.) The revised LOF specific to D.H. reduced his compensatory education award to 35 hours, reducing hours in every category and eliminating his compensatory education in the areas of communication and behavior. (*Id.* ¶¶ 95, 97.)

### C. B.H. and K.H. enrolled D.H. in private school.

By the time ODEW issued the revised LOFs, D.H. was an eighth-grade student still placed at WCESC. (*Id.* ¶ 98.) B.H. and K.H. decided, after years of waiting, to withdraw D.H. from WCESC and his school district of residence and use a state scholarship program to enroll him in private special education. (*Id.* ¶ 99.)

3

## II. STANDARD OF REVIEW

Rule 12(b)(1) provides that the defendant may move to dismiss based on a "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The standard of review of a motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Only a facial attack, which "questions merely the sufficiency of the pleading," is present here. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack requires the district court to "take[ ] the allegations in the complaint as true." *Id.* The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

## III. ARTICLE III STANDING

Plaintiffs bring five claims stemming from Defendants' reconsideration process and reissuance of the LOFs, seeking only declaratory and injunctive relief. Counts 1–3 allege violations of the IDEA for Defendants' failure to (1) guarantee IDEA's procedural safeguards; (2) timely correct IDEA noncompliance; and (3) exercise supervisory authority over educational agencies. In Counts 4–5, Plaintiffs bring a claim pursuant to 42 U.S.C. § 1983, arguing ODEW's reconsideration process violated their 14th Amendment right to procedural due process.[1]

---

[1] Although Plaintiffs pleaded their 14th Amendment claim and 42 U.S.C. § 1983 as two separate counts, Plaintiffs clarified in their briefing that "§ 1983 is the

4

Defendants argue that Plaintiffs lack Article III standing to seek their requested relief because, among other reasons, Plaintiffs have not alleged ongoing or future harm entitling them to such relief.

### A.     Legal Standard

Pursuant to Article III of the United States Constitution, standing is necessary to the exercise of jurisdiction and "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Once standing concerns arise—whether raised by defendants, or *sua sponte* by the Court in meeting its obligation to ensure its own jurisdiction—[p]laintiffs carry the burden to establish that standing requirements are met." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (Cole, J.) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–39 (2016)).

Injury is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 578 U.S. at 338 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The threat of future harm can satisfy this requirement as long as there is a 'substantial risk' that the harm will occur" but "'[a]llegations of *possible* future injury' are not sufficient." *Kanuszewski v. Mich.*

---

mechanism of action through which Plaintiffs bring their Fourteenth Amendment claim." (Pls.' Resp., PAGEID # 671.) For ease of reference the Court will refer to Counts 4 and 5 as Plaintiffs' "§ 1983 Claim".

5

*Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409, 414 n.5 (2013)).

"'[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). "[T]he type of harm alleged impacts the available relief." *Simpson-Vlach v. Michigan Dep't of Educ.*, No. 22-1724, 2023 WL 3347497, at *4 (6th Cir. May 10, 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Kanuszewski*, 927 F.3d at 406). "While allegations of past injury permit a plaintiff to seek compensatory relief, allegations of ongoing or future harm permit a plaintiff to seek declaratory or injunctive relief." *Id.* (citing *Kanuszewski*, 927 F.3d at 406; *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)). "A potential class representative must demonstrate individual standing vis-[à]-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

**B. Analysis**

Here, Plaintiffs request only declaratory and injunctive relief. Thus, Plaintiffs "must plead either a future injury that is certainly impending or presents a substantial risk of occurrence or a past injury that presents continuing, present adverse effects" as to named Plaintiffs B.H., K.H., and/or D.H. *Simpson-Vlach,* 2023 WL 3347497, at *4 (cleaned up).

6

### 1. Plaintiffs have not alleged past injuries with ongoing adverse effects.

Plaintiffs failed to plead continuing harm to D.H. and themselves.

Count 1 alleges that Defendants' reconsideration process "ha[s] made students and parents unsure of their rights and unable to access a fair state complaint system" and Count 3 alleges Defendants "put all students with disabilities in Ohio at risk of educational harm" because Defendants "created a precedent that any educational agency can demand changes to its enforcement or implementation of IDEA[.]"(*Id.* ¶¶ 123, 139.) Plaintiffs argue these allegations show ongoing harm because D.H. can still use the state complaint process while enrolled in private school. (Pls.' Br., PAGEID # 702–03.) But Defendants' reconsideration process ended as to D.H. when he received his revised LOF. And the fact that D.H. may hypothetically use the state complaint process in the future does not indicate that Defendants are currently denying D.H. and/or his parents access to a lawful complaint process.

Count 2 alleges the delay in corrective action resulting from the reconsideration process "caused even more unnecessary educational harm beyond what students had already been subjected to when the [systemic] complaint was filed" and Plaintiffs' § 1983 Claim alleges the reconsideration process "resulted in the reduction or elimination of substantive educational benefits of the Plaintiff class[.]" (*Id.* ¶¶ 130, 148.) And while Plaintiffs say that "D.H. has not received the compensatory education he is entitled to[,]" they do not allege any ongoing harm to D.H. or his parents resulting from the delay in corrective action or the reduction of

7

his original compensatory education award. (*Id.* ¶ 100.) "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).

Plaintiffs argue that they have sufficiently pleaded ongoing harm as to D.H.'s reduced compensatory education award because D.H. remains eligible to receive compensatory education for past IDEA violations even though he was withdrawn from WCESC and his original public school district. (Pls.' Br., PAGEID # 701–02.) "Compensatory education is a judicially-constructed form of relief designed to remedy *past* educational failings." *Somberg on behalf of Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 171 (6th Cir. 2018) (citing *Barnett v. Memphis City Schools*, 113 F. App'x 124, 126 (6th Cir. 2004) (emphasis in original)). Plaintiffs cite to *Somberg* for the proposition that a student who is withdrawn from public school may still receive compensatory education for past IDEA violations that occurred while the student was enrolled in public school. (Pls.' Resp., PAGEID # 701.) In *Somberg*, that court found that the plaintiff could seek "backward-looking relief in the form of [a] compensatory education" award because such an award "would provide meaningful relief to [the plaintiff] as a remedy for [the public school district's] *past* IDEA violations." *Id.* at 171 (emphasis added).

Unlike the plaintiff in *Somberg*, Plaintiffs "**are not seeking money damages or other retrospective relief**[.]" (Pls.' Resp., PAGEID # 672 (emphasis added).) Although Plaintiffs now seem to argue in their brief on standing that they

8

seek retrospective relief in the form of compensatory education, Plaintiffs' Complaint titled "Class Action Complaint for Declaratory and Injunctive Relief" contains no such request. Rather, they seek prospective relief requiring "Defendants to restore original compensatory education awards to any student whose hours were reduced or eliminated." (Compl., PAGEID # 27.) But Plaintiffs have not alleged any ongoing harm that such prospective relief would remedy. And, in response to the Motion, they concede that they are not seeking retrospective relief.

Thus, even assuming D.H. remains eligible to receive compensatory education for his former school district's past IDEA violations, D.H. and/or his parents nonetheless lack standing to seek their requested prospective relief because Plaintiffs have alleged no ongoing, adverse effects from ODEW's reduction of D.H.'s original award.

### 2. Plaintiffs have not alleged sufficient risk of future injury.

Plaintiffs' allegations are likewise insufficient to show future harm. To establish future harm, a plaintiff must show that "the threatened injury is 'certainly impending' rather than merely possible." *Simpson-Vlach*, 2023 WL 3347497, at *4. (citing *Clapper*, 568 U.S. at 409). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Lyons*, 461 U.S. at 103. In *Simpson-Vlach*, the court found that the plaintiffs failed to sufficiently plead risk of future harm from future school closures because the likelihood of the harm turned on a "hypothetical" and "attenuated" sequence of events: "that students would *again* switch to an extended period of

remote instruction, that this switch would constitute a change in placement under their IEP, that the school would fail to follow the IDEA's procedural protections, and that these violations would cause harm in a similar manner." *Simpson-Vlach*, 2023 WL 3347497, at *4 (emphasis in original).

Here, D.H. was withdrawn from WCESC and his public school district of residence and enrolled in private special education. Thus, Plaintiffs' allegations of future harm turn on a hypothetical sequence of events that is even more attenuated than the sequence found to be insufficient in *Simpson-Vlach*: that D.H. would be *re-enrolled* in public school and placed at an educational service center, that D.H. would *again* be the subject of a systemic complaint against his public school district and educational service center, that the public school district and educational service center would request that Defendants reconsider the complaint's findings, that Defendants would fail to follow the IDEA's procedural protections, and that these violations would cause harm in a similar manner. Since Plaintiffs have failed to allege a sufficient risk of future injury, they lack standing to seek injunctive or declaratory relief on that basis.

Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES**[2] this case **without prejudice** for lack of subject matter jurisdiction.

---

[2] Plaintiffs requested that the Court allow them 30 days to "intervene additional named Plaintiffs to represent the class[]" if the Court finds that they lack standing. (Pls.' Br., PAGEID # 705.) But when "'the named plaintiff's claim [is found to lack standing] before certification,' the ordinary rule is that 'dismissal of the action is required.'" *Wilson v. Gordon*, 822 F.3d 934, 942 (6th Cir. 2016) (quoting *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir.1993)). Plaintiffs provide no basis to depart from the ordinary rule.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion (ECF No. 15) is **GRANTED** and this case is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**